

Molly M. Winston
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Kent Wade Kimberling

United States District Court
Eastern District of Washington
Honorable Wm. Fremming Nielsen

| United States of America, | No. 2:20-CR-006-WFN-1 |
|---|---|
| Plaintiff, | Sentencing Memorandum |
| v. | |
| Kent Wade Kimberling, | |
| Defendant. | |

## I.  Introduction

Kent Wade Kimberling is 63-year-old man who likes to keep to himself, tinker around in his mother's garage, and build things from scratch. He accepts responsibility for building a cannon that technically meets the legal definition of a destructive device.[1] At the time of the June 22, 2021 hearing, Mr. Kimberling will recommend the Court sentence him to time served followed by three years of supervised release.

## II.  Factual and Procedural Background

Mr. Kimberling has been in custody since January 27, 2020 at the Spokane County Jail: approximately 17 months at the time of sentencing.  Mr. Kimberling continues to believe his physical health, including his hernias and lumps in his throat, are not being properly addressed at the Spokane County Jail. Due to the totality of Mr. Kimberling's health concerns and Covid-19 restrictions, multiple furloughs were required in order to adequately communicate with Mr. Kimberling regarding his case. He ultimately entered a guilty plea to Possession of an Unregistered Destructive Device on March 24, 2021.  Mr. Kimberling asserts that providing him medical care and correctional treatment should be a significant factor

---

[1] ECF No. 56.

Sentencing Memo
-1-

to be considered in imposing his sentence.[2] He has preserved his right to appeal any sentence greater than 24 months.[3]

### III. Discussion

#### a. The PSIR sets forth an accurate guideline calculation.

Mr. Kimberling agrees with the guideline calculation as set forth in U.S. Probation's draft Presentence Investigation report dated May 18, 2021: 30-37 months based on a total offense level of 17 and criminal history category III.[4]

The United States argues that the base offense level is increased by 4 levels due to the offense involving 8 to 24 firearms.[5] Not so. Upon information and belief, the United States comes to a total of 8 firearms by adding the cannon and silencer on to the 6 guns set forth in paragraph 12 of the presentence investigation report.[6] The "offense" of possession of the cannon did not "involve" the 6 guns referenced by any stretch.[7] The 6 guns listed are not Mr. Kimberling's guns and totally unrelated to the cannon. Upon information and belief, they belonged to his deceased father (Mary Kimberling's deceased husband) and were inherited by his mother. It was his mother that consented to the search of her home and her guns.[8] Mr. Kimberling

---

[2] 18 U.S.C. §3553(a)(2)(D).
[3] *See* ECF No. 56 (Plea Agreement) at 9.
[4] ECF No. 59 (PSIR), ¶209.
[5] *See* USSG §2K2.1(b)(1)(B).
[6] *See* ECF No. 59 (PSIR), ¶12.
[7] *Id.*
[8] *See* ECF No. 56 (Plea Agreement) at 4.

asserts that the USSG §2K2.1(b)(1)(B) special offense characteristic should not apply. The PSIR reflects that no firearms were located in the room where Mr. Kimberling stayed at his mother's house.[9]

Although Mr. Kimberling agrees that U.S. Probation's calculation is accurate, he does not agree that a guideline calculation is appropriate in this case and requests a downward variance from the sentencing guidelines based on the §3553(a) factors set forth below. Mr. Kimberling preserves the right to elaborate and set forth further information and argument against the United States' special offense characteristics, if necessary, at the time of sentencing.

> **b. The nature of the offense is limited to possession of a cannon with a bore of approximately 1 ¼ inches and an improvised explosive soda can projectile.**

Mr. Kimberling explained during his interview with police that he believed that making the cannon was legal based on his personal research and that he made "no illegal items." He explained that he believed projectiles were "totally legal" to shoot.[10] Mr. Kimberling had also built two smaller cannons from scratch.[11] The two smaller cannons did not exceed the dimensions required to qualify as "destructive devices." Mr. Kimberling did not use the device in a destructive manner and no one

---

[9] ECF No. 59 (PSIR), ¶110.
[10] ECF No. 59 (PSIR), ¶17.
[11] ECF No. 59 (PSIR), ¶20.

was injured in the making of the cannon. This is not an offense that is likely to be confused again as being legal after a 17-month period of incarceration. The nature and circumstances of this offense weigh in favor of a downward variance.[12]

### c. Public protection has been achieved.

Although some of Mr. Kimberling's prior arrests and convictions relate to what (on their face) appear to be dangerous activity, he did not cause physical harm upon anyone. It should be noted that Mr. Kimberling does not agree with the characterization of the events as set forth in the Presentence Investigation Report with regard to the 2019 "Harassment- Threat to Kill" charges in paragraphs 102-112. But, even if accepted as true, those threats never came to fruition and he did not take substantial steps towards causing any actual harm towards any person. There is no violence alleged in the charged no contact order violation from 2019 either.[13] Upon information and belief, the no contact order was subsequently quashed. The cannon is no longer in Mr. Kimberling's possession, therefore the public has been protected from any further risk of harm from the possession of the device.

///

---

[12] *See* 18 U.S.C. §3553(a)(1).
[13] ECF No. 59 (PSIR), ¶113-119.

### d. Mr. Kimberling's physical health and need for adequate medical care should be weighed heavily in favor of a downward variance.

Mr. Kimberling's health is deteriorating. Nearly every substantive conversation with Mr. Kimberling required the assistance accommodations due to ongoing persistent medical issues. Mr. Kimberling is hard of hearing and has no teeth, which makes it difficult for him to hear what is spoken to him and also difficult to hear what he is trying to communicate. He is also in constant pain for a variety of different health concerns:[14]

- Chronic body pains
- Lumps in his throat[15]
- Advanced hearing loss
- Vision impairment
- Recurring stomach hernias
- Full dental extractions
- Severe osteoarthritis
- Hypertension

- Gastroesophageal reflux disease
- Degenerative disk disease (spinal)
- Chronic neurodermatitis
- Need for Knee Replacement
- Need for Hip Replacement
- Acid reflux

In addition to pain, many of these issues cause him ongoing symptoms of loss of sleep, weight gain, and related mental health problems. He has also had episodes

---

[14] ECF No. 59, ¶167.
[15] Mr. Kimberling reports he first reported lumps in his throat to Spokane County Jail over a year ago and it still has not been addressed. He has specific fear of these lumps due to a family history of esophageal cancer.

Sentencing Memo
-5-

of passing out after experiencing severe dizziness in custody.[16] The need to provide Mr. Kimberling with medical care weighs heavily in favor of a lighter sentence.

### e. Mr. Kimberling will likely need to wait until his release from BOP in order to address his mental health and substance abuse.

Growing up Mr. Kimberling had ADHD and complications in school as a result.[17] Prior to incarceration Mr. Kimberling had a history of mental health issues that have not been adequately addressed to date.[18] Although he agrees that he described himself as having "triggered schizophrenic tendencies," he is not necessarily specifically diagnosed as "schizophrenic."[19] Mr. Kimberling expressed symptoms of depression, anxiety, and insomnia to jail staff and was ultimately prescribed Cymbalta. The Court should consider what services are available to Mr. Kimberling and likely to be offered in custody. If Mr. Kimberling's sentence is lengthy he will need to go through the classification process, have an intake at his facility, and many months could go by before he gets any treatment services. Conversely, if he is released in short order he could begin supervised release and become in engaged with mental health services in an expedited manner.

---

[16] *See* ECF No. 59 (PSIR), ¶168.
[17] *See* ECF No. 59 (PSIR), ¶183.
[18] *See* ECF No. 59 (PSIR), ¶169-175.
[19] *See* ECF No. 56 at 4.

This is an equally true and relevant concern regarding substance abuse treatment services. Substance abuse treatment will most efficiently be available to Mr. Kimberling on supervised release. Mr. Kimberling admits that he is a marijuana user.[20] He states that he has been prescribed marijuana in the past. Incarceration is not the answer for someone with co-occurring mental health, substance abuse, and medical care issues and is approaching his mid-60's. Mr. Kimberling needs treatment in the most effective manner, which is not in BOP custody.

    **f. Upon release, Mr. Kimberling will be able to both support and have the support of the woman who has been with him all along: his mom.**

Mr. Kimberling has a deep love for his mother who is aging, widowed, and has health concerns of her own. If released he would be able to spend quality time with her and help her with routine chores as he has done in the past by taking her grocery shopping, driving her to medical appointments, attending church, assisting around the house, and helping her with other chores as necessary.[21]

Mr. Kimberling is concerned that his mother has at least mild dementia and he wishes to spend as much time with her as possible during the life that she has left. He is passionate about helping his mother live independently for as long as possible.

---

[20] ECF No. 59 (PSIR), ¶19.
[21] ECF No. 59 (PSIR), ¶158.

Mr. Kimberling's desire to keep his widowed mother in her home has led to strains within his sibling group and he, unfortunately, does not have positive relationships with most of his siblings. More than anything Mr. Kimberling wants to make good on a dying wish from his father to always take care of his mother.[22]

### g. Mr. Kimberling's advanced age is a statistical indicator that he is less likely to recidivate.

The U.S. Sentencing Commission researched recidivism rates among federal offenders by age and concluded that "younger offenders were more likely to be rearrested than older offenders, were rearrested faster than older offenders, and committed more serious offenses after they were released than older offenders."[23] Thus, older offenders are less likely to recidivate. Elderly individuals should be given more lenient sentences, particularly when also considering poor health, substance abuse, and mental health as co-occurring issues. Mr. Kimberling is now aware of the technical specifications of what constitutes a destructive device and is unlikely to recidivate based on his age and co-occurring deterioration of his physical health. He has learned this lesson that hard way.

///

///

---

[22] ECF No. 59 (PSIR), ¶157.
[23] *Part Five: Recidivism Rates Among Federal Offenders by Age,* The Effects of Aging on Recidivism Among Federal Offenders, U.S. Sentencing Commission (December 2017).

### IV. Conclusion

A sentence of approximately 17 months followed by 3 years of supervised release will reflect the seriousness of the offense, promote respect for the law, and provide just punishment. When considering the nature and circumstances of the offense, the history and characteristics of Mr. Kimberling a variance well below the guideline range is reasonable under these circumstances.

Dated: June 7, 2021.

        Federal Defenders of Eastern Washington & Idaho
        Attorneys for Kent Wade Kimberling

        <u>s/ Molly M. Winston</u>
        Molly M. Winston WSBA #50416
        10 North Post Street, Suite 700
        Spokane, Washington 99201
        509.624.7606
        molly_winston@fd.org

Service Certificate

I certify that on June 7, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Patrick Cashman.

<u>s/ Molly M. Winston</u>
Molly M. Winston WSBA #50416
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
molly_winston@fd.org